**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT ASHLAND**

**CIVIL ACTION NO. 26-45-DLB-EBA**

**C.W. AND H.W., individually and as Parents and next friends of B.W., a minor** **PLAINTIFFS**

**v.** **MEMORANDUM OPINION AND ORDER**

**MORGAN COUNTY BOARD OF EDUCATION, et al.** **DEFENDANT**

*** *** *** *** ***

## I. INTRODUCTION

This matter is before the Court on four Motions to Dismiss filed by the various Defendants (Docs. # 6-9). The motions have been fully briefed, and are ripe for the Court's review. For the following reasons, the first and third motions (Docs. # 6 & 8) are **granted**, and the second and fourth motions (Docs. # 7 & 9) are **granted in part** and **denied in part**.

## II. FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit stems from alleged misconduct of Morgan County Public Schools and its "failure to provide a Free Appropriate Public Education to a six-year-old student ("B.W."). (Doc. # 1 at 2). According to Plaintiffs, the District failed to evaluate B.W. for suspected emotional or behavioral disabilities despite the parents voicing their concerns and requesting evaluations, leading to an inadequate IPE (Individualized Education Plan). (Id. ¶ 14-16). The complaint states that, in May 2024, the District agreed to reconvene an ARC (Admission and Release Committee), but did not occur when the school year began

on August 14, 2024. (Id. ¶ 17-18). At some point, Plaintiffs state, B.W. was "subjected to punitive 'lap-walking' during recess." (Id. ¶ 20).

Subsequently, on either August 28 or 29, Plaintiff alleges that multiple Defendants, including Principal Larissa Johnson, physically restrained B.W. in a special education resource room as well as the main office and adjacent offices off of the main office. On August 30, 2024, an ARC meeting was convened but without the parents present. (Id. ¶ 23-32). Plaintiffs allege that several Defendants involved in restraining B.W. were not trained in physical restraint under Kentucky regulations. (Id. ¶ 28).

Plaintiffs filed an IDEA complaint on November 14, 2024, and the Hearing Officer entered Findings of Fact, Conclusions of Law and a Final Decision Order on July 5, 2025. Petitioner filed a timely appeal to the Exceptional Child Appeals Board (ECAB) on or about August 1, 2025, with its final appellate decision issued on December 19, 2025. (Doc. # 10-1 at 1-2, 25, 28).

Further, Plaintiffs allege that in retaliation for their IDEA and state complaints, District Superintendent Ralph Hamilton interfered with Plaintiffs' employment by contacting H.W.'s employer and attempted to interfere with B.W.'s grandmother's employment as well. (Id. ¶¶ 38-42).

Plaintiffs filed this action bringing a range of allegations against Defendants the Morgan County Board of Education and its employees (Ralph Hamilton, Superintendent; Larissa Johnson, Principal; Amanda Lee, Chief Academic Officer; Katlin Haney, Deputy Superintendent; Shelley Cole, teacher; Sara Liesegang, teacher; Megan Risner, Assistant Principal; Amanda Dickerson, teacher; Gwenna Patrick, assistant; Daniel Griffith, assistant; Crstal Montgomery, assistant; and Stacia Blackburn, assistant) suing

some in their individual capacity, some in their official capacity, and some in both. (Doc. # 1 at 1-2).

The claims for relief stem from The District's alleged failure to provide the educational support Plaintiffs claim B.W. was entitled to, the school's use of restraints on the August 28th incident, and alleged retaliatory acts taken by Superintendent Ralph Hamilton. Plaintiffs claim to seek damages, declaratory judgment, and injunctive relief on a series of claims: violation of IDEA (20 U.S.C. § 1400 et seq.) (Count I); discrimination and violation of Section 504 (29 U.S.C. § 794) (Count II); Violation of ADA Title II (Count III); violation of B.W.'s Fourteenth Amendment Substantive Due Process Rights under 42 U.S.C. §1983 (Count IV); Retaliation (Count V); Failure to train and Monell Liability (Count VI); Assault and Battery (Count VII); Negligence (Count VIII); Defamation (Count IX); False Light (Count X); Tortious Interference (Count XI); and Intentional Infliction of Emotional Distress (Count XII). (Doc. # 1 at 7-16). In response to the Complaint, Defendants filed a series of Motions to Dismiss (Doc. # 6; Doc. # 7; Doc. # 8; Doc. # 9). All motions having been fully briefed, the matter is ripe for the Court's review.

## III. ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint that fails to state a claim upon which relief can be granted. To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is deemed facially plausible "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard asks for "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In addressing a motion to dismiss under Rule 12(b)(6), a district court must accept the complaint's factual allegations as true, draw all reasonable inferences in the plaintiff's favor, and only then determine whether those facts and inferences plausibly give rise to an entitlement to relief. *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020). However, the Court will "disregard bare legal conclusions and 'naked assertion[s],' affording the presumption of truth only to genuine factual allegations." *Dakota Girls, LLC v. Philadelphia Indem. Ins. Co.*, 17 F.4th 645, 648 (6th Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). Further, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not state a claim that can survive at the motion to dismiss stage. *Fritz v. Michigan*, 747 F. App'x 402, 405 (6th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). Factual allegations, "assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir.2007) (emphasis in original). In short, a claim cannot survive a motion to dismiss if the plaintiff has not pled sufficiently plausible facts to support a "viable legal theory" with respect to all material elements of each claim. *Eidson v. State of Tenn. Dep't. of Children's Serv's.*, 510 F.3d 631, 634 (6th Cir. 2007).

**1. *First Motion to Dismiss (Doc. # 6)***

**a. Introduction**

The Court will first address the Motion to Dismiss for Failure to State a Claim submitted by Defendants Lee, Cole, Liesegang, Risner, Patrick, Griffith, Montgomery, and Blackburn, to the extent that each are sued in their individual capacities.

The Complaint herein lists each of the above-named individuals by name and job position in the caption on pages 1 and 2, but never again mentions any of them by name or job position in Paragraphs 1 through 133 of the Complaint. The multi-paragraph introduction generally refers to "defendants," and Paragraph 9 refers to "[t]he remaining individual Defendants" after separating Superintendent Ralph Hamilton in Paragraph 8. Thereafter, the Complaint references "multiple Defendant staff members" in Paragraph 24, without specifying which Defendants, and references "several Defendants" in Paragraph 28, without specifying which Defendants. No other reference is made in the recitation of facts (Paragraphs 1-42) which might be interpreted as relating to any of the above-named individual Defendant(s). The Court will consider the Motion to Dismiss count-by-count.

**b. Counts I, II, and III**

First, Defendants rightly observe, and Plaintiff now cedes (Doc. # 11 at 7) that public employees are not individually liable under IDEA, ADA Title II, or Section 504.[1] Accordingly, Defendants' Motion to Dismiss (Doc. # 6) Counts I, II, and III is **granted.**

---

[1] The IDEA is Spending Clause legislation. See Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy, 548 U.S. 291, 295 (2006). Statutes enacted under the Spending Clause "will not support an action against [a school official] in her individual capacity." Kinman v. Omaha Pub. Sch. Dist., 171 F.3d 607, 610-11 (8th Cir.1999) (holding no individual liability under Title IX, another statutory scheme adopted under the Spending Clause). Count II of the Complaint (¶¶ 50-56) is brought under Section 504 the Rehabilitation Act (29 U.S.C. §794); and Count III of the Complaint (¶¶ 57-63) is brought under Title I of the Americans with Disabilities Act. There is also no individual liability against government officials under the ADA or Rehabilitation Act. Lee v. Michigan Parole Bd., 104 F. App'x 490, 493 (6th Cir. 2004) (holding that neither the ADA nor Rehabilitation Act impose liability on government employees sued as individuals)

**c. Count IV**

Count IV of the Complaint (Doc. # 1 ¶¶ 64-68) asserts a Section 1983 claim, which can be pleaded against an individual. Specifically, after incorporating by reference all preceding paragraphs, Plaintiffs allege that "Defendants, acting under color of state law, deprived B.W. of his substantive due process right to bodily integrity." Doc. # 1 at 9). The Complaint, in its recitation of facts, does not allege any conduct against the Defendants with any specificity that would lead the Court to infer a Section 1983 violation stemming from violation of bodily integrity.

The Sixth Circuit has "consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir.2008) (citing *Terrance v. Northville Reg'l Psychiatric Hosp*., 286 F.3d 834, 842 (6th Cir.2002)). The Court must analyze separately whether Plaintiffs have stated a plausible constitutional violation by each individual defendant, and we cannot ascribe the acts of all Individual Defendants to each individual defendant. *See id*. at 684–88; *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ*., 926 F.2d 505, 512–15 (6th Cir.1991); *see also Colvin v. Caruso*, 605 F.3d 282, 292 (6th Cir.2010) ("Allegations of respondeat superior do not sustain a § 1983 claim against state employees in their individual capacities, meaning that officials are personally liable for damages under that statute 'only for their own unconstitutional behavior.'" (quoting *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir.1989))).

Nowhere in the factual allegations of the Complaint or under the Count IV heading do Plaintiffs allege "with particularity, facts that demonstrate what *each* defendant did."

*Lanman*, 529 F.3d at 684. The defendants are not named or specifically accused of any specific act that they committed. Accordingly, Defendants' Motion to Dismiss (Doc. # 6) Count IV is **granted.**

#### d. Counts V and VI

Count V of the Complaint (Doc. # 1 ¶¶ 69-81) asserts retaliation and is expressly pleaded only against Defendant Hamilton and the Board of Education. Count VI of the Complaint (Id. ¶¶ 82-87) alleges a failure to train and Monell Liability against the Board, but does not allege any of the above-named individual Defendants had a personal duty to train any other employee of the Board. Defendants' Motion to Dismiss (Doc. # 6) Count V and VI is **granted.**

#### e. Counts VII and VIII

In Count VII, Plaintiffs allege assault and battery, never once referring to a Defendant by name, only referring to "Defendants" generally. Count VIII alleges negligence against Defendants, once more without any specificity. Plaintiffs allege that "Defendants" owed a duty to exercise reasonable care to ensure B.W.'s safety at school, and breached that duty by failing to train staff, allowing untrained staff to restrain students, using restraints, and failing to supervise and monitor staff conduct." (Doc. # 1 ¶¶ 97-102).

A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678, (2009) (citing Twombly, 550 U.S. at 556). An allegation that "defendants" committed some act, "without any details about who did what is inadequate" under *Iqbal* and *Twombly*, and "does not propound a plausible contention that a particular person did anything wrong." *Select Rehab., LLC v. EmpowerMe Rehab.*

*Ky. LLC,* 2021 WL 3754547, at 3 (W.D. Ky. Aug. 24, 2021) (citing RehabCare Grp. E., Inc. v. CC Care, LLC, 2016 WL 2595108 at *6 (N.D. Ill. May 4, 2016) (citation omitted)). Because Plaintiffs Complaint does not allege with any specificity that any of the Defendants of this Motion committed any act that would constitute assault and battery or negligence, Defendants' Motion to Dismiss (Doc. # 6) Count VII and VIII is **granted.**

**f. Counts IX, X, XI, and XII**

Plaintiffs fail to allege any conduct against Defendants that would entitle them to relief within Counts IX, X, XI, XII. The claims are directed specifically at Superintendent Hamilton and stem from his alleged defamatory conduct. Defendants' Motion to Dismiss (Doc. # 6) Counts IX. X, XI, and XII are **granted.** Accordingly, Defendants' Motion to Dismiss (Doc. # 6) is **granted** in its entirety.

***2. Second Motion to Dismiss (Doc. # 7)***

**a. Introduction**

The Court will now turn to the Motion to Dismiss for Failure to State a Claim submitted by Defendants Larissa Johnson, Katlin Haney, and Amanda Dickerson, each to the extent sued in their individual capacity. (Doc. # 7).

The Complaint lists each of the above-named individuals by name and job position in the caption on pages 1 and 2. (Doc. # 1 at 1-2). After the caption, Defendant Johnson is referenced again in Paragraph 21 alleging she "speculated B.W. had Oppositional Defiant Disorder but did not convene an ARC [meeting] or initiate evaluation;" and again in Paragraph 26 alleging she forced B.W. to the ground and held him there without justification. (Doc. # 1 ¶¶ 21, 26). After the caption, Defendant Haney is referenced in Paragraph 31 for allegedly failing to properly notify the parents of certain alleged events

and in Paragraph 36 for allegedly "restrict[ing] staff from answering parental questions." (Doc. # 1 ¶ ¶ 31, 36). Further, after the caption, Defendant Dickerson is only referenced in Paragraph 20 as allegedly subjecting the minor Plaintiff to "punitive 'lap walking' during recess in 100+ degree heat." (Doc. # 1 ¶ 20). The Court will consider the Motion to Dismiss count-by-count.

**b. Counts I, II, and III**

Plaintiff now cedes (Doc. # 11 at 7) that public employees are not individually liable under IDEA, ADA Title II, or Section 504. Accordingly, Defendants' Motion to Dismiss (Doc. # 7) Counts I, II, and III is **granted.**

**c. Count IV**

Count IV of the Complaint (Doc. # 1 ¶¶ 64-68) asserts a Section 1983 claim, which can be pleaded against an individual, but under the Count IV heading itself, it only references "Defendants" in Paragraph 65 without specifying which ones or what conduct by any particular Defendant(s) or by all Defendants collective is alleged to constitute a substantive due process violation. After incorporating by reference all preceding paragraphs, Plaintiffs allege that "Defendants, acting under color of state law, deprived B.W. of his substantive due process right to bodily integrity." (Doc. # 1 at 9).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' *Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Twombly*, 550 U.S. 544, 570, (2007)). Construing the complaint in the light most favorable to the plaintiff, accepting Plaintiff's factual allegations as true, and drawing inferences in Plaintiffs favor, the court finds that Plaintiff has sufficiently pled its Section 1983 claim against Defendants Dickerson and Johnson, who are specifically

identified as subjecting Plaintiff to "punitive lap-walking" and being forced to the ground, respectively (Doc. # 1 ¶ ¶ 21, 26). Plaintiffs must give Defendants "fair notice" of their claim(s) against them. *Swierkiewicz v. Sorema* N.A., 534 U.S. at 512, 122 S.Ct. 992 (indicating that the short and plain statement of claim must "'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests'") (citation omitted).

The Court finds that Plaintiffs have met that burden as it applies to Dickerson and Johnson. Plaintiffs have failed, however, in alleging a Section 1983 infringement in Count IV against Katlin Haney. Plaintiffs allege that "Defendants, acting under color of state law, deprived B.W. of his substantive due process right to bodily integrity" but there is nothing in the facts to infer that Haney had any involvement in either alleged episode of deprivation. Of course, in ruling on a motion to dismiss, the Court does not address the substance of the allegations in whether they rose to the "egregious" level of unjustified misbehavior that the Fourteenth Amendment Describes under the "shocks the conscience" standard. *Domingo v. Kowalski*, 810 F.3d 403, 410 (6th Cir. 2016). Thus, Defendants' Motion to Dismiss (Doc. # 7) Count IV is **granted** as to Haney, but **denied** as to Dickerson and Johnson.

**d. Counts V and VI**

Count V of the Complaint (Doc. # 1 ¶¶ 69-81) asserts retaliation and is expressly pleaded only against Defendant Hamilton and the Board of Education. Count VI of the Complaint (Id. ¶¶ 82-87) alleges a failure to train and Monell Liability against the Board, but does not allege any of the above-named individual Defendants had a personal duty to train any other employee of the Board. Defendants' Motion to Dismiss (Doc. # 7) Counts V and VI is **granted.**

**e. Count VII**

Count VII of the Complaint (Doc. # 1 ¶¶ 88-96) alleges the torts of assault and battery, claiming the "Defendants" intentionally acted in a manner that placed B.W. in reasonable apprehension of harmful or offensive contact and made harmful or offensive contact with B.W. by restraining or confining him. There are no factual allegations that support a claim of tort or battery against Dickerson and Haney. There are enough factual allegations against Johnson, who is identified in the facts as holding B.W. to the ground, (Doc. # 1 ¶ 26) to survive a motion to dismiss for failure to state a claim. Defendants' Motion to Dismiss (Doc. # 7) Count VII is **granted** for Haney and Dickerson, but **denied** for Johnson.

**f. Count VIII**

Count VIII of Plaintiffs' Complaint (Doc. # 1 ¶¶ 97-102) alleges the tort of negligence. Aside from any duty prescribed by statute, teachers and school administrators have a duty "to take all reasonable steps to prevent foreseeable harm to [their] students." *Williams v. Kentucky Dept. of Educ.*, 113 S.W.3d 145, 148 (Ky.2003) (citations omitted). Plaintiffs' claim is based on both failure to train and supervise, as well as Defendants "[u]sing restraint and seclusion when not reasonably necessary." (Id. ¶ 99). The negligence claim, therefore, is pled specifically pertaining to the alleged restraint incident. There is no indication that the alleged lap-walking instructed by Dickerson is the subject of Plaintiffs' negligence claim. Further, Defendants argue that the alleged actions of Defendant Haney in failing to properly notify the parents or restricting other staff from speaking to the parents does not have any relation to the negligence claim asserted by Plaintiffs' on behalf of B.W. (Doc. # 7 at 4). Plaintiff argues that this "ignores that failures

to properly document restraints, conduct lawful debriefings, and provide accurate information directly relate to student safety, restraint oversight, and prevention of future harm." Doc. # 12 at 7). But here, there is no "future harm" in dispute, nor is there any credible allegation that Haney's conduct caused subsequent harm to Plaintiffs. Haney is not identified in the Complaint as participating in the alleged use of restraints, nor is he identified as exercising supervision in the use of restraints. Principal Johnson, however, is specifically identified in the facts as restraining B.W. Accordingly, Defendants' Motion to Dismiss (Doc. # 7) Count VIII is **granted** for Haney and Dickerson, but **denied** for Johnson.

**g. Counts IX, X, XI, and XII**

Plaintiffs fail to allege any conduct against Defendants that would entitle them to relief within Counts IX, X, XI, XII. The claims are directed specifically at Superintendent Hamilton and stem from his alleged defamatory conduct. Defendants' Motion to Dismiss (Doc. # 7) Counts IX. X, XI, and XII are **granted.** Accordingly, Defendants' Motion to Dismiss (Doc. # 7) is **granted** in part.

**3. *Third Motion to Dismiss (Doc. # 8)***

**a. Introduction**

The Court will now turn to the Motion to Dismiss for Failure to State a Claim submitted by Defendant Dr. Ralph Hamilton to the extent he is sued in his individual capacity. (Doc. # 8).

The Complaint herein lists Dr. Ralph Hamilton by name and job position in the caption on page 1. Thereafter, Dr. Hamilton is referenced once in the introduction with an allegation of retaliation through "spreading false and defamatory information within the

community about B.W.'s parents and interfering with Plaintiffs' and their family members' employment relationships." (Doc. # 1 at 3). Dr. Hamilton is identified in Paragraph 8 of the Complaint as being the Superintendent of the Morgan County Schools. (Id. ¶ 8). In Paragraph 22, Dr. Hamilton is alleged to have ensured the Plaintiffs that a "support plan" would be implemented, and Plaintiffs claim this did not occur. (Id. ¶ 8). In Paragraph 38, Dr. Hamilton is alleged to have spread false statements about B.W.'s parents (though the content of such statements are not identified, nor is the purported audience to whom such statements were allegedly made). (Id. ¶ 38). In Paragraph 39, Dr. Hamilton is alleged to have contacted Plaintiff H.W.'s employer to interfere with H.W.'s employment (though no facts are identified as to what was said or done to constitute such alleged interference). (Id. ¶ 39). In Paragraph 40, again, Dr. Hamilton is alleged to have attempted to interfere with B.W.'s grandmother's employment as well (though no facts are identified as to what form this alleged attempt took, or what acts are alleged to have constituted such an attempt). (Id. ¶ 40).

**b. Counts I, II, and III**

First, Defendants rightly observe, and Plaintiff now cedes (Doc. # 13 at 8) that public employees are not individually liable under IDEA, ADA Title II, or Section 504. Accordingly, Defendant's Motion to Dismiss (Doc. # 8) Counts I, II, and III is **granted**.

**c. Count IV**

Count IV of the Complaint (Doc. # 1 ¶¶ 64-68) asserts a Section 1983 claim, which can be pleaded against an individual, but it does not mention Superintendent Hamilton at all, and only refers to "Defendants" generally. It is, however, presented as a bodily integrity

claim, (Id. ¶ 66). Nowhere in the facts is Hamilton alleged to have applied any force to B.W. or caused injury. Defendant's Motion to Dismiss (Doc. # 8) Count IV is **granted**.

### d. Counts V, IX and XI

Count V of the Complaint asserts a retaliation claim (Doc # 1 ¶¶ 69-81). The facts relevant to the claim are contained within paragraphs 38-40. The retaliatory acts and statements are further encompassed by Counts IX for defamation (Doc. # 1 ¶¶ 103-115) and Count XI for tortious interference (Doc. # 1 ¶¶ 121-127). Neither the paragraphs of Count V nor the factual allegations contain any details about any retaliatory act, nor do they provide any specificity in describing the alleged "campaign of retaliation" of Hamilton. Regarding the tortious interference claim, in their factual allegations, Plaintiffs seem to be unsure themselves *who* attempted the alleged interference. They claim that "Superintendent Hamilton himself, or under his direction, interfered with Plaintiffs' employment by contacting Plaintiff H.W.'s employer" and "attempted to interfere with B.W.'s grandmother's employment as well." (Doc. # 1 ¶¶ 38, 39). Nowhere does the complaint state what Hamilton allegedly said, when he made the statements, what employment action he took, or who he made the statements to.

The Court will "disregard bare legal conclusions and 'naked assertion[s],' affording the presumption of truth only to genuine factual allegations." *Dakota Girls, LLC.*, 17 F.4th at 648 (6th Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). Further, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not state a claim that can survive at the motion to dismiss stage. *Fritz v. Michigan*, 747 F. App'x at 405 (6th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).

Paragraphs 121 through 127, supporting Plaintiffs' tortious interference claim, do not identify a single act by Dr. Hamilton which interfered with the Plaintiffs' business relationships, in part because they adopt the formulaic assertion that Dr. Hamilton made unspecified "defamatory or retaliatory statements" and then list a threadbare recital of the elements of the claim by asserting that "Hamilton's actions were motivated by retaliation and malice" and that Hamilton "acted improperly and without justification." (Doc. # 1 ¶¶ 124, 125). Rule 8 does not require "detailed" factual allegations, but it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Duneske v. X,* No. 2:24-CV-11347-TGB-DRG, 2024 WL 5444862 (E.D. Mich. Nov. 20, 2024). Accordingly, Defendant's Motion to Dismiss (Doc. # 8) Count XI is **granted.**

In terms of specificity, "[a] defamation complaint must allege the substance of the allegedly defamatory statements," but "need not ... set [them] out verbatim." *Doe v. Univ. of Dayton*, No. 3:17-cv-134, 2018 WL 1393894, at 5 (S.D. Ohio Mar. 20, 2018). In their complaint, the Plaintiffs allege that, at some point, "Defendant Ralph Hamilton made false statements of fact about B.W.'s parents to third parties within the Morgan County community," that these "statements were communicated orally and/or in writing, and "were defamatory in nature and included assertions that Plaintiffs were dishonest, that Plaintiffs were acting improperly in pursuing legal claims; Plaintiffs were disruptive, unstable, or untrustworthy; Plaintiffs' actions were illegitimate or harmful to the community. (Doc. # 1 ¶¶ 104-6). To survive a motion to dismiss, allegations must be specific enough to establish the relevant "who, what, where, when, how or why." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 437

(6th Cir.2008) (internal quotation marks omitted). Plaintiffs have not pled their defamation claim with enough specificity.

Further, in *Yancey v. Hamilton,* 786 S.W.2d 854, 857 (Ky. 1989), the Kentucky Supreme Court adopted the Restatement (Second) of Torts definition that, "a defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory fact as the basis for the opinion." Here, the only alleged substance of the alleged defamation is pure opinion (dishonesty, impropriety, disruptiveness, instability, untrustworthiness, harmfulness). Thus, what little substance Plaintiffs plead fails to present an indispensable element of their defamation claim. In order to survive a Rule 12(b)(6) motion, a complaint must contain allegations supporting all material elements of the claims. *Bishop v. Lucent Techs., Inc.,* 520 F.3d 516, 519 (6th Cir.2008). Defendant's Motion to Dismiss (Doc. # 8) Counts IX and V is **granted.**

**e. Counts VI, VII, and VIII**

Count VI of the Complaint (Doc. # 1 ¶¶ 82-87) alleges a failure to train and Monell Liability against the Board, but does not allege that Superintendent Hamilton had any personal duty to train any employee of the Board. Count VII of the Complaint (Doc. # 1 ¶¶ 88-96) alleges the torts of assault and battery, but there are no factual allegations that support a claim of tort or battery against Hamilton. Count VIII of Plaintiffs' Complaint (Doc. # 1 ¶¶ 97-102) alleges the tort of negligence. Plaintiffs' claim is based on both failure to train and supervise, as well as Defendants "[u]sing restraint and seclusion when not reasonably necessary." (Id. ¶ 99). The negligence claim, therefore, is pled specifically pertaining to the alleged restraint incident, which Hamilton is not alleged to have

participated in. Defendant's Motion to Dismiss (Doc. # 8) Counts VI, VII, and VIII is **granted.**

**f. Counts X and XII**

Count X alleges the claim of false light. (Doc. # 1 ¶¶ 116-120). While this claim is based on the same vague, seemingly opinion-based statements contained in the factual allegations, an immediate, legal issue is that Plaintiffs fail to allege that Hamilton publicized any false information. In *McCall v. Courier–Journal and Louisville Times Co.*, 623 S.W.2d 882 (Ky. 1981), the Kentucky Supreme Court adopted the Restatement (Second) of Torts § 652E (1976), which sets forth the requirements for a false light claim as follows:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

"Publicity" means that "the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Restatement (Second) of Torts § 652D cmt. a (1976). Examples of publicity include: "publication in a newspaper or a magazine, even of small circulation, or in a handbill distributed to a large number of persons, or any broadcast over the radio, or statement made in an address to a large audience[.]" *Id*. However, it is not enough "to communicate a fact concerning the plaintiff's private life to

a single person or even to a small group of persons." *Id*. "The distinction, in other words, is one between private and public communication." *Id*.

Plaintiffs contend, through bare assertion, that Defendant "publicized information placing Plaintiffs in a false light before the community," (Doc. # 1 ¶ 117) but this is empty of sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Twombly*, 550 U.S. at 570 (2007). It wholly lacks any factual information as to the "who, what, where, when, how or why" of the alleged false light claim. *Total Benefits Planning Agency, Inc.*, 552 F.3d 430, 437 (6th Cir.2008).

Finally, Count XII of Plainitffs' Complaint alleges Intentional Infliction of Emotional Distress (IIED). But despite repeated, vague references to Hamilton's "conduct" and "actions" (Doc. # 1 ¶¶ 129-133), the complaint lacks sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Twombly*, 550 U.S. at 570 (2007). Further, "[i[t has long been held in Kentucky that the tort of outrage as adopted by the Kentucky Supreme Court in *Craft v. Rice*, 671 S.W.2d 247 (Ky.1984), is a gap-filler tort only available when the alleged tortious conduct cannot be redressed by traditional common law torts. Plaintiffs' IIED is written as a claim for traditional torts of defamation and retaliation, so the claim fails for that reason as well. Defendant's Motion to Dismiss (Doc. # 8) Counts X and XII is **granted**

**4. Fourth Motion to Dismiss (Doc. # 9)**

**a. Introduction**

The Court will now turn to the Motion to Dismiss for Failure to State a Claim submitted by Defendants Morgan County Board of Education, Ralph Hamilton, Larissa. Johnson, Amanda Lee, Katlin Haney, and Megan Risner. (Doc. # 9). This Motion seeks

dismissal of Plaintiffs' claims against the Board and individual defendants to the extent that they are sued in their official capacity.

**b. Official Capacity Claims**

First, the Court will address the Complaint as it is directed against School employees in their official capacities. Official-capacity suits, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Brandon v. Holt*, 469 U.S. 464, 473 (1985). "[W]hen bringing a claim against a state official in their official capacity, the doctrine of *Ex parte Young* permits suit so long as the individual "seek[s] prospective relief to end a continuing violation of federal law." *Coyle v. Univ. of Kentucky*, 2 F. Supp. 3d 1014 (E.D. Ky. 2014) (citing *Diaz v. Michigan Dep't of Corr*., 703 F.3d 956, 964 (6th Cir. 2013). While Plaintiffs' *ad damnum* clause (Doc. # 1 at 17) states that injunctive relief is being sought, there is no relief specifically articulated that would require the Defendants be named in their official capacity. Further, there is no indication that the student is still enrolled in the Morgan County Schools or intends to enroll in the future, giving Plaintiffs standing for injunctive relief. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). The Court will now address Plaintiffs claims as directed against the Board.

**c. Count I (Timely Exhaustion of IDEA)**

In their Motion to Dismiss, Defendant argues that Plaintiffs' IDEA claim (Count I) is untimely (Doc. # 9 at 3). Plaintiffs argue that Defendant's argument represents a "fact-dependent jurisdictional challenge" implicating "administrative materials outside the

pleadings and disputed legal conclusions regarding timeliness and exhaustion." (Doc. # 14 at 2). A motion under Rule 12(b)(6) is "generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations. But, sometimes the allegations in the complaint affirmatively show that the claim is time-barred." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). While a motion under Rule 12(b)(6) considers only the allegations in the complaint, "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

The Introduction paragraphs of the Complaint start with the characterization that this action "arises from the systemic failure of Morgan County Public Schools to provide a Free Appropriate Public Education ("FAPE") to" the Minor Plaintiff, and reference disability evaluations and an Individualized Education Program ("IEP").[2] (Doc. # 1 at 2). The Introduction paragraphs also assert that minor Plaintiff's parents "filed an Individuals with Disabilities Education Act (IDEA) due process request." (Id. at 3). Paragraph 2 of the Complaint invokes the IDEA (Id.). Because exhaustion of administrative remedies is a jurisdictional prerequisite to their claims against the Board, the Plaintiffs allege in Paragraph 42 that they "have exhausted the required administrative remedies." (Id. at 7). Elsewhere in the Complaint, the Plaintiffs repeat that they filed an IDEA due process complaint. (Id. ¶¶ 70(a),71(a)). Though not attached to their Complaint, the proceedings are "referred to in the plaintiff's complaint and are central to [Plaintiffs'] claim." *Weiner* 108

[2] See 20 U.S.C. §1401(14).

F.3d at 89 (6th Cir. 1997). Thus, the Court is free to reference the final administrative decision, attached to Defendants' Motion to Dismiss (Doc. # 10-1).

Title 20 U.S. Code § 1415(i)(2)(A) provides a party aggrieved by a final administrative decision "the right to bring a civil action" subject to a timeliness limitation: "[t]he party bringing the action shall have 90 days from the date of the decision of the hearing officer to bring such an action, or, if the State has an explicit time limitation for bringing such action under this subchapter, in such time as the State law allows." The final administrative decision was rendered on December 19, 2025, (Doc. # 10-1 at 27) and Plaintiff filed this action on March 5, 2026, 76 days later. Thus, the timeliness of the IDEA claim turns on whether Kentucky has its own explicit time limitation different from the default 90-day limitation, which it does.

The current statutory scheme allows persons adversely affected by a final order from ECAB applying the IDEA to seek judicial review pursuant to KRS 4 13B.140. *See King ex rel. King v. Floyd County Bd. of Educ.*, 228 F.3d 622, 623-24 (6th Cir. 2000) (addressing "appropriate state statute of limitations" for judicial review of IDEA decisions). KRS 13B.140(1) says:

> all final orders of an agency shall be subject to judicial review in accordance with the provisions of this chapter. A party shall institute an appeal by filing a petition in the Circuit Court of venue, as provided in the agency's enabling statutes, within thirty (30) days after the final order of the agency is mailed or delivered by personal service. The statutory scheme requires strict compliance.

No judicial relief from an administrative agency's order generally exists as a matter of right. *Kentucky Unemp. Ins. Comm'n v. Wilson*, 528 S.W.3d 336 (Ky. 2017). Such relief "is a matter of legislative grace." *Nickell v. Diversicare Mgmt. Servs.*, 336 S.W.3d

454, 456 (Ky. 2011). Consequently, "the failure to follow the statutory guidelines for such an appeal is fatal." *Triad Dev./Alta Glyne, Inc. v. Gellhaus,* 150 S.W.3d 43, 47 (Ky. 2004). KRS 13B.140(1) is the pertinent statutory guideline here and it requires filing of the petition seeking judicial relief in thirty (30) days or less. "Where an appeal is filed in the circuit court by grant of a statute, as in this case, the parties must strictly comply with the dictates of that statute." *Spencer County Preservation, Inc. v. Beacon Hill, LLC,* 214 S.W.3d 327, 329 (Ky. App. 2007). Because Plaintiffs' IDEA claim was untimely, it must be dismissed. Defendant's Motion to Dismiss (Doc. # 9) Count I is **granted.**

**d. Counts II and III**

In *Fry v. Napoleon Community Schools*, 580 U.S. 154 (2017), the Supreme Court held that IDEA's exhaustion requirement is not implicated in Section 504 of the Rehabilitation Act and ADA claims if the parents are seeking something other than a free appropriate education which is the sole relief available under the IDEA. Plaintiffs argue that their ADA and 504 claims are not time-barred because they seek relief unavailable under IDEA: "Plaintiffs seek compensatory damages for physical restraint, emotional distress, retaliation, reputational harm, threats, and constitutional injury—forms of relief unavailable through IDEA administrative proceedings." (Doc. # 14 at 4). While Plaintiffs do recite their state tort relief with this general list or requested relief, compensatory damages may be sought under Section 504 and ADA claims. See Johnson v. City of Saline, 151 F.3d 564, 573 (6th Cir. 1998). Though inartfully pled, Plaintiffs complaint plausibly reads as seeking compensatory damages under Counts II and III.

Both the Rehabilitation Act and the ADA make it unlawful for certain public schools to discriminate against their students based on disability. *See* 29 U.S.C. § 794

(Rehabilitation Act); 42 U.S.C. § 12132 (ADA). To bring a claim for unlawful discrimination under either statute, a plaintiff must plead facts that show that (1) he has a disability, (2) he is qualified to participate in the program, and (3) he has been discriminated against because of her disability. *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 453 (6th Cir. 2008). When it comes to pleading discrimination under this third prong, a plaintiff has two options: he can allege intentional discrimination or a failure to accommodate. *Roell v. Hamilton County*, 870 F.3d 471, 488 (6th Cir. 2017).

Regarding the first point, Defendant argues that Plaintiffs have failed to allege with sufficient factual specificity a qualifying disability or discriminatory conduct under Section 504 and the ADA. The ADA primary definition covers any individual who has "a physical or mental impairment that substantially limits one or more major life activities" of the individual. 42 U.S.C. § 12102(1)(A). "Major life activities" are in turn defined to include a range of physical, manual tasks, as well as "speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." Id. § 12102(2)(A). While Plaintiffs have not included a clinical diagnosis in their pleading, they have alleged that "teachers documented B.W.'s difficulty with emotional regulation, transitions, frustration, overstimulation, and elopement." (Doc. # 1 at 4). At this stage, with these facts taken as true, they are sufficient to make a plausible showing of impairment of things like learning, reading, concentrating, thinking, communicating, and working.

Defendant argues that the complaint fails to identify the disability accommodations sought or what disparate treatment B.W. is alleged to have received. (Doc. # 9 at 6). But Plaintiffs allege the fact that, while "earlier teachers implemented individualized interventions (visual supports, structured environment, positive behavior supports), these

were never incorporated into B.W.'s IEP" for the school year in question. (Doc. # 1 ¶ 14). This fact, taken as true, demonstrates that Plaintff was qualified to participate in the IEP. Plaintiffs also partly present their Section 504 and ADA claim under the "deliberate indifference standard." *See K.C. by & through T.C. v. Marshall Cnty. Bd. of Educ.*, 762 F. App'x 226 (6th Cir. 2019) (recognizing "deliberate indifference" standard in a case alleging abuse committed by a teacher against a student). Plaintiffs have alleged sufficient facts to support their Section 504 and ADA claims under a failure to accommodate theory. Defendant's Motion to Dismiss (Doc. # 9) Counts II and III is **denied**.

**e. Count IV**

Count IV, alleging a violating of § 1983, does not directly plead Monell liability against the Board. Count VI does directly allege Monell liability. Because Count IV is thus duplicative as against the Board, Defendant's Motion to Dismiss (Doc. # 9) Count IV is **granted**.

**f. Count V**

Count V alleges retaliation against Superintendent Hamilton in his official capacity and the Board.

Above, the Court dismissed Count V against Hamilton in his personal capacity for its failure to identify, with sufficient factual specificity, the nature of the alleged retaliation. (*See*, *Supra* II.B.3.d). The Court does the same here for Hamilton in his official Capacity and the Board. Further, the Court notes that Plaintiff has failed to "demonstrate that a 'deliberate choice to follow a course of action is made from among various alternatives by the official ... responsible for establishing final policy with respect to the subject matter

in question.'" *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). The complaint contains no factual allegations to support a conclusion that Superintendent Hamilton was a final policymaker for the Board "with respect to the subject matter in question" in those paragraphs." Defendant's Motion to Dismiss (Doc. # 9) Count V is **granted**.

**g. Count VI**

Count VI of the Complaint alleges Monell liability against the Board for failure to train and argues that "[m]ultiple staff were untrained in restraint procedures required under Kentucky law." (Doc. # 1 ¶ 83). The Supreme Court has held that "the inadequacy of … training may serve as the basis for § 1983 liability." City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989). "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Connick v. Thompson, 563 U.S. 51, 61 (2011). However, a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Id. (citing Oklahoma City v. Tuttle, 471 U.S. 808, 822-23 (1985)).

To state a § 1983 failure-to-train claim upon which relief can be granted, "a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference' to the rights of persons with whom the untrained employees come into contact." Id. (citing Harris, 489 U.S. at 388). "Only then 'can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." Id. (citing Harris, 489 U.S. at 389).

"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Id. "A

pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Id. at 62 (internal citations omitted). However, "in a narrow range of circumstances" a pattern of similar violations might not be necessary to show deliberate indifference." Id. at 63 (citing Bd. of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 409 (1997)). When "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need" for such training, the failure to train will result in § 1983 liability. Harris, 489 U.S. at 390.

This is one of those narrowly defined circumstances. Here, Plaintiffs' purported harm, the violation of bodily integrity, is the obvious and predictable consequence of failing to train teachers and staff in proper restraint techniques.

In seeking dismissal, Defendant argues that under Kentucky Administrative Regulations (704 KAR7 7:160), Section 6(3) only requires a "core team" of school personnel to be trained in the implementation of physical restraint. But Section 3(3)(e) states that "[p]hysical restraint may only be implemented in a public school or educational program if [s]chool personnel implementing the physical restraint are appropriately trained as required by Section 6(3) . . . except to the extent necessary to prevent physical harm to self or others in clearly unavoidable emergency circumstances where other school personnel intervene and summon trained school personnel as soon as possible." Id. § 3(3)(e). These are considerations that require development of the factual record, and, as pled, the claim is not suitable for dismissal. Defendant's Motion to Dismiss (Doc. # 9) Count VI is **denied**.

### h. Counts VII, VIII, IX, X, XI, and XII

Counts VI through XII assert state tort claims of assault and battery, negligence, defamation, false light, tortious interference, and IIED. Local school boards are agencies of state government that are "entitled to governmental immunity" so long as they are performing governmental functions, rather than proprietary functions. *Yanero v. Davis*, 65 S.W.3d 510, 527 (Ky. 2001). "Thus, [a school board] can only be sued in a judicial court for damages caused by its tortious performance of a proprietary function, but not its tortious performance of a governmental function, unless the General Assembly has waived its immunity by statute."[3] *Nixon v. Greenup Cty. Sch. Dist.*, 890 F.Supp.2d 753, 762 (E.D. Ky. 2012). Proprietary functions are "non-integral undertakings of a sort private persons or businesses might engage in for profit." *Breathitt Cty. Bd. Of Educ. v. Prater*, 292 S.W.3d 883, 887 (Ky. 2009). There is no allegation that the Board was engaged in proprietary functions, as defined by Kentucky law, and no amount of factual development is needed to show that. Defendant's Motion to Dismiss (Doc. # 9) Counts VII, VIII, IX, X, XI, and XII is **granted**.

## IV. CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** that**:**

(1) Defendants' Motions to Dismiss (Docs. # 6 & 8) are **granted.**

(2) Defendants' Motion to Dismiss (Docs. # 7 & 9) are **granted in part and denied in part.**

---

[3] Here, there is no argument, evidence, or suggestion to indicate that Morgan County BOE waived immunity by statute. *See* (Docs. # 1, 14).

**IT IS FURTHER ORDERED** that any Defendant who has claims remaining against them shall file an Answer to those remaining claims **within twenty (20) days from the date of entry of this order**.

This 28th day of October, 2026.

**Signed By:**
***David L. Bunning***
**Chief United States District Judge**